[No. 12885.   Department One. — January 27, 1890.]

## WILLIAM BURROWS, APPELLANT, *v.* ROBERT K. BURROWS ET AL., RESPONDENTS.

WATER RIGHTS — PRIOR APPROPRIATION — FAILURE TO POST AND RECORD NOTICE — RIPARIAN RIGHTS OF SUBSEQUENT PATENTEE. — The failure to post and record a notice of appropriation will not vitiate a prior actual appropriation of waters flowing upon the public domain, as against a riparian proprietor who subsequently settles upon and obtains a patent to land below the point of diversion.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order refusing a new trial.

The facts are stated in the opinion.

*R. M. F. Soto,* for Appellant.

· *Geil & Morehouse,* for Respondents.

GIBSON, C. — The parties to this suit are the owners of and cultivate separate farms in Monterey County, lying upon and embracing a natural stream known as Muddy Creek and flowing into Clear Creek, which has its source easterly of their farms, and when running flows in a westerly direction, first through the land of respondent Olds, next through that of respondent Burrows, and then through the land of appellant. During the winter and spring of each year, and in times of great freshets, it flows in a large stream down to and across the lands of appellant, but in the summer and during dry seasons the waters of the stream are much diminished, and but a small quantity, if permitted to flow uninterruptedly, would reach the land of appellant.

The appellant acquired title to his land from the government of the United States by a patent issued to him on April 30, 1883, prior to which time the land was a part of the public domain. The respondents from 1876, for over six years prior to the issuance of the patent, had

owned, occupied, and cultivated their respective farms, and continued to own, occupy, and cultivate them until suit brought. During the year 1877, and more than six years before appellant acquired title to his land from the government, the respondents each dug a ditch from Muddy Creek, above its junction with Clear Creek, down to and across his own land to his residence, and thereby diverted and appropriated a small stream of water from Muddy Creek for domestic and irrigating purposes. They continuously maintained their respective ditches from that time until this suit was brought, and during the dry season of each year they, through their respective ditches, appropriated, diverted, and used for beneficial purposes, upon their respective farms, a small stream of water.

At the time the ditches were dug, both banks of Muddy Creek were a portion of the public domain, and the appropriation and diversion of water from the creek were not objected to or interfered with until the commencement of this suit. The land that appellant now owns was, at the time of respondents' settlement on their separate farms, and when they dug their separate ditches, open, unoccupied, and unclaimed land; and it was not until long afterward that appellant settled upon his said land.

The flow of water in Muddy Creek, notwithstanding the appropriation and diversion by respondents, was and is, during the greater portion of each year, sufficient for all the wants of appellant to which he applies the water; but during about three months of the summer of each year, viz., from July 1st to October 1st, the flow of water extends below the respondents' several points of diversion to within one hundred to one hundred and fifty yards of plaintiff's land, where it sinks and is lost in the sand. A small quantity would, but for the diversions of respondents, reach the land of appellant, and would thereby, it seems, prevent appellant's well from drying up.

On this state of facts the court decreed, that all the parties had equal rights to the use of the waters of Muddy and Clear creeks for beneficial purposes, and that such waters be divided between all the parties from the first day of July until the 1st of October in each year, and until the setting in of the rainy season of each year, as follows: Five days each, first to the appellant, next to the respondent Burrows, and next to the respondent Olds, and thereafter during the prescribed period to alternate in the same manner. And that all parties be perpetually enjoined from interfering with the natural flow of the waters of said creek, except in accordance with the decree.

The appeal is from all that portion of the decree that adjudges respondents to have equal rights with appellant to the use of the waters of the creeks in dispute, and that apportions the use of the waters to respondents, and enjoins the appellant from interfering with or using the waters during the periods that respondents are given the use thereof; also from an order denying a new trial. There is no brief for respondents on file.

The first point urged by the appellant in his brief is, that although the court found that he obtained the patent to his land on April 30, 1883, and that the respondents had made their several diversions of the waters in question in 1877, the court erred because it did not find at what time he (appellant) acquired a vested interest in his land. The statement on motion for a new trial does not contain any such specification of error, nor statement of evidence upon which such a specification could be based; hence it must be disregarded.

The principal contention of appellant, however, is, that as the respondents failed to show they had severally complied with the provisions of sections 1415 and 1416 of the Civil Code, or with the local rules and customs (of the latter of which there is no evidence in the record, and therefore needs no further notice), the court erred

in finding that their several appropriations were valid as against the appellant, a lower riparian proprietor upon the same stream, because the respondents severally failed to prove that they had posted, and caused to be recorded in the office of the county recorder, the notices required by section 1415 of the Civil Code.

The undisputed findings show that the respondents had settled upon their respective farms, and had each appropriated and diverted to their several farms portions of the waters of the streams in controversy, where they were used continuously for beneficial purposes for over six years prior to the time appellant settled upon his farm and acquired title thereto from the United States government. The findings were justified without proof of posting and recording of the notice prescribed by section 1415 of the Civil Code. (*De Necochea* v. *Curtis*, 80 Cal. 407.) There the plaintiff, who was the owner of a tract of land across which a natural stream extended, which had its source in a large spring one half a mile from his land, in 1880, in order to better utilize the water of the stream, without posting or causing to be recorded the notice provided for in said section 1415, constructed a ditch from the spring to his land, and diverted the water of the spring through it to his land, where he applied the water to beneficial uses. Five years afterward, in 1885, the plaintiff, a pre-emptioner, settled upon and acquired title to the land upon which the spring was situated; and shortly afterward made a ditch, and thereby diverted the water of the spring upon her land for proper uses.

The question thereby presented was, whether the defendant took the title to her land subject to the prior appropriation of plaintiff, notwithstanding his non-compliance with section 1415. It was held that she took the title to her land from the government, subject to the right of plaintiff to divert and use the water of the spring. Mr. Chief Justice Beatty, in considering the effect of plain-

tiff's failure to post the notice provided for in section 1415, said:—

"In this case it is clear from the findings that the respondent's right to purchase did not become a vested right prior to the year 1885, and that as early as the year 1880 the appellant had completed the diversion, and was in full enjoyment of the use of the water of the spring for the irrigation of his land.

" But the respondent contends that he was nevertheless not an appropriator, and had no vested right to the use of the water recognized or acknowledged by the laws of this state, because, having commenced and completed his diversion of the waters of the spring after the enactment of the Civil Code, he failed and neglected to post or record the notice prescribed by section 1415.

"As this is the point upon which our decision must turn, we will endeavor to state our views with respect to it somewhat more fully and explicitly than we have hitherto done.

"Sections 1415 and 1416 of the Civil Code read as follows:—

"'SEC. 1415. A person desiring to appropriate water must post a notice in writing in a conspicuous place at the point of intended diversion, stating therein,—1. That he claims the water there flowing to the extent of (giving the number) inches, measured under a four-inch pressure; 2. The purposes for which he claims it, and the place of intended use; 3. The means by which he intends to divert it, and the size of the flume, ditch, pipe, or aqueduct in which he intends to divert it. A copy of the notice must, within ten days after it is posted, be recorded in the office of the recorder of the county in which it is posted.

"'SEC. 1416. Within sixty days after the notice is posted, the claimant must commence the excavation, or construction of the works in which he intends to divert the water, and must prosecute the work diligently and uninterrupt-

edly to completion, unless temporarily interrupted by snow or rain.'

"It may be conceded that if these provisions of the law stood alone and unqualified, strict, or at least substantial, compliance with their requirements would be, as counsel claim, a *sine qua non* to the acquisition of any right to divert running water from its natural channel.

"But these provisions do not stand alone.  Section 1418 reads as follows:—

"'Sec. 1418.  By a compliance with the above rules the claimant's right to the use of the water relates back to the time the notice was posted.'

"In this provision we begin to see the purpose and object of the legislature, which, in our opinion, was merely to define with precision the conditions upon which the appropriator of water could have the advantage of the familiar doctrine of relation, upon which it had always been held before the statute that one who gave sufficient notice of his intention to appropriate, and followed up his notice by diligent prosecution of the work, was, upon its completion, to be deemed an appropriator from the date of his notice, and was, therefore, prior in time and stronger in right than an intervening appropriator, notwithstanding his diversion of the water might be first completed.  We are not, however, left to any doubtful implication to be drawn from section 1418.  Section 1419 reads as follows:—

"'Sec. 1419.  A failure to comply with such rules deprives the claimants of the right to the use of the water as against a subsequent claimant who complies therewith.'

"This language clearly and necessarily implies that there is a right to the use of running water, acknowledged by the legislature and cognizable by the courts, which is good against all the world except a claimant who has complied with the rules prescribed in sections 1415 and 1416.  Now, what is this right? What can it be except the right of one who has fully completed the diversion

of running water, and applied it to a beneficial use, before the initiation of an adverse right of appropriation under the law, or the acquisition of an adverse right in the land to be affected by the diversion? And why should not such a right be recognized and enforced?"

In the case before us, as we have seen, the respondents had acquired the prior right to divert and use nearly all the waters of the stream, yet the court divided the use of the waters during the irrigating season equally between all the parties. In this perhaps it went too far, and awarded the appellant more than he was entitled to, but the respondents must have been satisfied, as they have acquiesced in the judgment.

We therefore advise that the judgment and order appealed from be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.